[No. 1532-1.    Division One.    January 14, 1974.]

ROBERT J. CATHCART *et al., Appellants,* v. WILLIAM R. ANDERSEN *et al., Respondents.*

Timothy R. Fishel, David Kader, and Eugene Seligmann, for appellants.

Slade Gorton, Attorney General, James B. Wilson and Richard H. Holmquist, Assistants, and Roland L. Hjorth, for respondents.

WILLIAMS, J.—The problem in this case is whether meetings of the dean and faculty of the law school of the University of Washington must be conducted in accordance with the open public meetings act.

The action was brought by some students of the law school against the dean and faculty for a declaration that the open public meetings act is applicable to faculty meetings, for an order permanently enjoining the dean and faculty from violating provisions of the act, and for assessment of civil penalties against the dean and faculty for alleged violations of the act. The Board of Regents of the University of Washington applied for and was granted leave to intervene. Upon motion of the dean and faculty and the Board of Regents, the trial court ordered summary judgment of dismissal. The students appeal from this order.

The dean and faculty of the law school hold regular meetings concerning a variety of subjects, and, with some unimportant exceptions, these meetings are closed to law students as well as the general public. The open public meetings act requires that:

> All meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter.

RCW 42.30.030. The reasons given by the trial court for the summary judgment of dismissal were that "The faculty of the University of Washington School of Law is not the

governing body of a public agency or a subagency . . ." and "the Law School was not created by or pursuant to statute, ordinance or other legislative act." The university agrees with this reasoning, and so the issue presented is whether the law school, within the context of the act, was created pursuant to statute, or other legislative act, as a public agency with the law dean and faculty as its governing body.

The first question is whether the law school is a "public agency", which is defined in the act as meaning:

> (c) Any subagency of a public agency which is created by or pursuant to statute, ordinance or other legislative act, including but not limited to planning commissions, library or park boards, and other boards, commissions and agencies.

RCW 42.30.020. The university is a developmental arm of the state and acknowledged to be a public agency. It is governed by the Board of Regents (RCW 28B.20.100) which acts under general powers placed in it by the legislature. RCW 28B.20.130. One of these general powers is the authority to:

> (4) Establish such colleges, schools or departments necessary to carry out the purpose of the university and not otherwise proscribed by law.

RCW 28B.20.130. The legislature has declared that one of the aims and purposes of the university is to provide a liberal education in law. RCW 28B.20.020. It is apparent that the Board of Regents established the law school to carry out this aim and purpose.

A "subagency" is not defined in the act. The Restatement (Second) of Agency § 5 (1958) describes a "subagent" as "a person appointed by an agent empowered to do so, to perform functions undertaken by the agent for the principal, but for whose conduct the agent agrees with the principal to be primarily responsible."

The Board of Regents, acting through the president of

the university, has designated the law dean and faculty the governing body of the law school with the power to perform important tasks for the university. Among them, as applied to the law school, is the power to control:

1. Admission and graduation requirements
2. Curriculum and academic programs
3. Scholastic standards required of students
4. Recommendations for degrees
5. Additional power necessary to provide adequate instruction and supervision of its students.

The law school was created by the university and given certain powers by which to function. It is, therefore, an agent of the university, a subagent of the state and so a "public agency" within the purview of the statute.

■ The next question is whether the law school was "created by or pursuant to statute . . . or other legislative act . . ." The attorney general, who is legal counsel for the Board of Regents as well as the dean and faculty, interprets the prepositional phrase "pursuant to" as used in the act to mean that the organization must be specifically authorized by statute. Attorney General Opinion, October 29, 1971. "Pursuant to" is defined in *Webster's Third New International Dictionary* 1848 (1969) as:

> in the course of carrying out : in conformance to or agreement with : according to . . .

Black's Law Dictionary 1401 (rev. 4th ed. 1968) defines "pursuant" as:

> [a] following after or following out; line in accordance with or by reason of something; comformable; in accordance; agreeably, conformably; a carrying out or with effect, the act of executing . . .

Using the ordinary meaning of the phrase, the law school came into existence pursuant to the plan of the legislature, as expressed in the enabling legislation, for the establishment of the university.

The next question is whether the dean and faculty of the

law school compose its governing body. The argument is made that they cannot be because the ultimate responsibility and authority for the government of the university is charged by statute to the Board of Regents. RCW 28B.20.100. Of course, the Board of Regents cannot delegate responsibilities charged to it as the governing body of the university. However, the board does have full authority to delegate its powers and duties. RCW 28B.10.528. Chapter 1, § 2 of the Standing Orders of the University of Washington reads as follows:

> 2. *Government of the University*. For the purpose of effecting the government of the University under and by the Board of Regents, the President of the University or his designee is authorized to act for the Board of Regents in formulating, prescribing and issuing rules, regulations, and executive orders not inconsistent with the By-laws, Standing Orders, and other orders of the Board and applicable State law for the immediate government of the University. In carrying out this duty, the President or his designee shall consult the University faculty and may delegate in whole or in part the responsibility for formulating such rules, regulations, and executive orders to said faculty.
>
> The channel of authority from the Board of Regents to the faculty, staff, and other officers and employees of the University shall be through the President of the University. All faculty, staff, and other officers and employees of the University shall, through appropriate channels, be responsible to the President of the University and through him to the Board of Regents.

Moreover, it should be noted that RCW 28B.20.200 provides that "the said faculty shall have charge of the immediate government of the institution under such rules as may be prescribed by the board of regents."

That the dean and faculty do exercise delegated power, is forcibly brought home in the opinion of the Washington State Supreme Court in *DeFunis v. Odegaard,* 82 Wn.2d 11, 507 P.2d 1169 (1973). In that case, the admission practices of the university as applied by the law school are brought into question by a rejected applicant, who commenced ac-

tion against the Board of Regents, president, law dean and some of the law faculty, charging them with discrimination and seeking a court order directing his admission to the law school, or $50,000 in damages. The discrimination claimed arose when the law school endeavored to carry out the university's policy that disadvantaged racial and ethnic minority groups achieve a reasonable representation within the student body. The importance to the public of this policy was stated by the court in these paragraphs:

> It can hardly be gainsaid that the minorities have been, and are, grossly underrepresented in the law schools—and consequently in the legal profession—of this state and this nation. We believe the state has an overriding interest in promoting integration in public education. In light of the serious underrepresentation of minority groups in the law schools, and considering that minority groups participate on an equal basis in the tax support of the law school, we find the state interest in eliminating racial imbalance within public legal education to be compelling.

(Footnote omitted.) *DeFunis v. Odegaard, supra* at 32.

> The legal profession plays a critical role in the policy making sector of our society, whether decisions be public or private, state or local. That lawyers, in making and influencing these decisions, should be cognizant of the views, needs and demands of all segments of society is a principle beyond dispute. The educational interest of the state in producing a racially balanced student body at the law school is compelling.
> Finally, the shortage of minority attorneys—and, consequently, minority prosecutors, judges and public officials—constitutes an undeniably compelling state interest. If minorities are to live within the rule of law, they must enjoy equal representation within our legal system.

(Footnote omitted.) *DeFunis v. Odegaard, supra* at 35.

The role of the dean and faculty in controlling admission to the law school is reported in *DeFunis* at page 14 as follows:

> The dean and faculty of the law school, pursuant to the authority delegated to them by the Board of Regents and the president of the university, have established a com-

mittee on admissions and readmissions to determine who shall be admitted to the law school.

*See* Morris, *Equal Protection, Affirmative Action and Racial Preferences in Law Admissions DeFunis v. Odegaard,* 49 Wash. L. Rev. 1 (1973). From a reading of 'the *DeFunis* case and the record before us, the conclusion is inescapable that the law dean and faculty do govern the law school.

■ The purpose of the open public meetings act should be noted:

> The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.
>
> The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

RCW 42.30.010. The apprehension and concern which citizens have over the lodgment and exercise of governmental power has often been expressed. George Washington said that "Government is not reason, it is not eloquence—it is force! Like fire it is a dangerous servant and a fearful master; never for a moment should it be left to irresponsible action." G. Seldes, *The Great Quotations* 727 (1960). The function of the open public meetings act is to insure that the deliberations and actions of the various governmental organizations be open to public view so that citizens may observe the consideration and application of governmental power. As was stated in *Times Publishing Co. v. Williams,* 222 So. 2d 470, 473 (Fla. Ct. App. 1969), in which a similar act was under review:

> Every thought, as well as every affirmative act, of a public official as it relates to and is within the scope of

his official duties, is a matter of public concern; and it is the entire *decision-making process* that the legislature intended to affect by the enactment of the statute before us. This act is a declaration of public policy, the frustration of which constitutes irreparable injury to the public interest. Every step in the decision-making process, including the decision itself, is a necessary preliminary to formal action.

■ It is apparent in the record that attendance at meetings of the Board of Regents would be fruitless insofar as witnessing the decision-making process upon most questions vital to the operation of the law school. It is at the meetings of the law dean and faculty that the admission criteria are fixed, the courses of study settled upon, rules for the discipline of law students promulgated, and other important matters discussed and decided. If the open public meetings act is to be effective, it must apply at the point where authority is exercised, as well as where it is initially lodged. *Accord, Board of Pub. Instruction v. Doran,* 224 So. 2d 693 (Fla. 1969).

■ The contention is made that the exercise of the powers heretofore discussed is incidental to the work of the faculty, which is to teach and research. Although the exercise of governmental power may be of relatively little significance to the faculty and occupy only a small portion of their time, it is the "people's business" within the contemplation of the act and must be conducted in the open. Informal discussions which have to do with bettering the skill of members of the faculty in the art of teaching, and increasing their competence in the law, are not within the contemplation of the statute. These are incidental pursuits which do not call for collective deliberation and decision-making.

There are a number of uncontroverted affidavits in the record which establish that the dean and faculty were advised by the Attorney General that their meetings were not in violation of the open public meetings act, and that they accepted this advice. Accordingly, no civil penalties may be

imposed because knowledge is an essential element of the violation. RCW 42.30.120.

There remains no genuine issue of fact and final disposition should be made. *Leland v. Frogge*, 71 Wn.2d 197, 427 P.2d 724 (1967). The basic problem presented for resolution is of primary interest to the university and its law school and only nominally concerns the dean and faculty as individuals. An injunction is unnecessary, and costs should not be taxed against the nominal parties.

That part of the judgment denying the claim for civil penalties and application for an injunction, is affirmed. The cause is remanded with direction to the superior court to enter judgment declaring the open public meetings act applicable to official meetings of the dean and faculty of the University of Washington Law School. Costs will be taxed against the Board of Regents.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied May 13, 1974.

Review granted by Supreme Court July 29, 1974.