**Ruth Marie SPRAGUE**

v.

**The UNIVERSITY OF VERMONT and Gerald P. Francis, Individually and as Interim Academic Vice-President.**

**Civ. A. No. 86–308.**

United States District Court,
D. Vermont.

June 9, 1987.

Edwin L. Hobson, Linton & Linton, Burlington, Vt., for plaintiff.

Ritchie E. Berger, Dinse, Erdmann & Clapp, Lee B. Liggett, Gen. Counsel, President's Office, University of Vermont, Burlington, Vt., for defendants.

## OPINION AND ORDER

BILLINGS, District Judge.

On March 24, 1987, defendants filed with this Court a motion for partial summary judgment as to Counts III, IV, V, and VI of plaintiff's amended complaint. Plaintiff opposed the motion. On June 1, 1987, this Court held oral argument on the motion. For the reasons outlined below, the motion is GRANTED as to Count III and DENIED as to Counts IV, V, and VI.

*Background*

Plaintiff has been employed by defendant University of Vermont for approximately 23 years. She is currently a lecturer in histology and anatomy at the Medical School. Approximately six years ago, relations between plaintiff and the chair of her department, Dr. Rodney L. Parsons, became strained, allegedly because plaintiff filed employment discrimination charges against the University for certain actions taken by Dr. Parsons.

From 1983 until the present plaintiff has taught the first-year required course in Histology along with Dr. Jerome F. Fiekers and Dr. Carson Cornbrooks. Apparently some friction between Dr. Sprague and Drs. Fiekers and Cornbrooks has occurred during that time. In March 1986, Dr. Parsons summoned plaintiff to his office and charged her with forging a number of end-of-the-course student evaluations. These evaluations had been brought to his attention by Drs. Fiekers and Cornbrooks in the fall of 1985. Plaintiff denied the allegations and refused to resign. On August 19 and 20, 1986, the University held a hearing pursuant to section 226 of the University of Vermont Officer's Handbook to evaluate whether Dr. Sprague should be terminated for cause. The hearing committee delayed decision pending additional handwriting analysis. Finally, on March 30, 1987, the committee (of which defendant Francis is the chair) handed down its recommendation to the president of the University that Dr. Sprague be terminated for cause.

Plaintiff filed this action on December 1, 1986, alleging procedural irregularities and discriminatory retaliation for her earlier charges of sex discrimination. Counts I and II recite federal and state constitutional claims which are not the subject of this summary judgment motion. Count III alleges a violation of the Vermont Administrative Procedures Act, 3 V.S.A. § 801 et seq.; Count IV claims a violation of the

Vermont Open Meeting Law, 1 V.S.A. §§ 311–12; Count V pertains to an alleged violation of the Vermont Access to Public Records Law, 1 V.S.A. §§ 319, 320; and Count VI asserts a violation of the Vermont Fair Employment Practices Act, 21 V.S.A. § 495(a). Defendants seek summary judgment on all four of these state statutory claims.

## DISCUSSION

### I. The Administrative Procedures Act (Count III)

The Vermont Administrative Procedures Act (APA), 3 V.S.A. § 801 et seq., provides procedures to be followed by state administrative agencies in conducting the business of the State of Vermont. An "agency" is defined by the statute as "a state board, commission, department, agency, or other entity or officer of state government, other than the legislature, the courts, the Commander in Chief and the Military Department, authorized by law to make rules or to determine contested cases." 3 V.S.A. § 801(b)(1). Defendants assert that the University is not an agency within this definition and therefore is not subject to the APA. According to defendants, the APA was established to provide procedures for the state administrative departments specifically listed in Chapter 9, 3 V.S.A. § 212, and the five state administrative agencies.[1] It is undisputed that UVM is not a part of or connected with any of these departments or agencies. Instead, Defendants assert that UVM is a public corporation governed by an independent Board of Trustees for a non-profit educational purpose and as such is not covered by the APA.

Plaintiff maintains that the APA governs the procedures of all state entities not covered by other specific statutory rules. The procedures are minimal, plaintiff asserts, and would not interfere with UVM's independence while providing important protections for aggrieved members of the University community.

The question before us, then, is whether UVM is an "agency" within the definition of "agency" in the APA and within the contemplation of the legislature at the time the APA was enacted.[2] This question is one of first impression in this Court, has never been decided by the Vermont Supreme Court, and, as far as we can determine, has been addressed only once by a state superior court.[3] Analysis of this question requires evaluation of three areas: first, an examination of the 1955 Act incorporating UVM to determine the legislature's intent at that time; second, a comparison of UVM's characteristics as an institution to those of the state agencies that are undeniably covered by the APA; and finally, a consideration of the opinions and decisions of the state officers and courts who have addressed the issue.

The University of Vermont and State Agricultural College was incorporated in 1955 to "be recognized and utilized as an instrumentality of the state for providing public higher education." Act No. 66, 1955 Vt. Laws 57. "Instrumentality" is generally defined as a synonym for "agency." See Webster's Ninth New Collegiate Dictionary 627 (1985); Webster's Third New International Dictionary 1172 (1981). Notably, however, the Act does not use the precise word "agency" that is later used in the APA and other statutes. The use of the word "instrumentality" demonstrates that the legislature intended UVM to be closely

---

**1.** The five agencies are Administration, 3 V.S.A. § 2202; Development and Community Affairs, 3 V.S.A. § 2402; Environmental Conservation, 3 V.S.A. § 2802; Human Services, 3 V.S.A. § 3002; and Transportation, 3 V.S.A. § 3102.

**2.** The University was chartered in 1865 and incorporated in 1955. The APA was enacted in 1967. Therefore, the legislature that incorporated UVM could not have considered the applicability of the APA.

**3.** In *Wolfgang v. University of Vt.*, No. S427–76CnC (Chittenden Sup.Ct. Aug. 25, 1977), the Court granted summary judgment for defendant on plaintiff's challenge to the University's decision to charge him tuition as a nonresident student because UVM, "although a state university, is not an 'agency' as defined by [the APA] and so not subject to its requirements." No further discussion of the issue appears in the opinion.

connected to the state, but to conclude that because "instrumentality" and "agency" are synonyms the legislature intended UVM to be treated identically with all other state agencies is unsound. Further, the mere fact that "instrumentality" means the same as "agency" does not mean that the legislature intended UVM to be within the *APA's* definition of "agency." Even if UVM is a state agency for some purposes, it may not be a state agency for purposes of applying the APA. To subject the University to the APA's requirements, we must find that UVM comes under the APA's definition of "agency", not just our general understanding of the word.

The 1955 Act incorporating UVM provides that "[n]othing in this act shall be construed to bring the University of Vermont and State Agricultural College within the provisions of Chapters 27, 28, 31, 188, 440 and 446 of the Vermont Statutes, Revision of 1947, as amended." 1955 Vt.Laws 59. Chapter 27 of the 1947 statutes is entitled "Administrative Departments." It creates certain administrative departments and describes their duties and limitations. 1947 Vt.Laws 157. Chapter 28 is entitled "Classification of State Personnel" and addresses issues concerning the personnel of state government. 1947 Vt.Laws 159.[4] The legislature's exemption of UVM from these chapters indicates that the legislature did not intend UVM to be treated as an administrative agency. No later statute has altered that intent. The 1967 legislature that created the APA clearly contemplated that its provisions should apply to the state's administrative departments and agencies, yet, at that time, the 1955 Act had already unambiguously stated that UVM was not to be identified with those administrative agencies. Therefore, had the 1967 legislature intended to bind UVM to the APA, it could have been expected to have expressly mentioned the University. The 1955 Act's exemption of UVM from the provisions governing administrative de-

partments and the APA's failure to definitely overturn that policy by including UVM in its scope suggest that the legislature did not intend to apply the APA to UVM. Failure to include UVM in the statute is not conclusive of legislative intent, however, as the APA's definition of "agency" does not specifically list every public body it includes.

As examination of the legislative intent is inconclusive, the next area for consideration in determining whether the APA applies to UVM is a comparison of UVM's characteristics as an institution to those of the agencies more obviously covered by the APA. First, the financial aspect: The 1955 Act provides that "the general assembly of the State of Vermont shall, from time to time, appropriate such sums as it deems necessary for the support and maintenance of said corporation." 1955 Vt.Laws 57. In 1986 the legislature appropriated approximately $22 million for UVM, see Plaintiff's Reply to Defendants' Motion for Partial Summary Judgment at 11, but this sum accounts for only approximately 14% of UVM's total budget, see Affidavit of Ben R. Forsyth, attached to Defendants' Supplemental Memorandum In Support of Defendants' Motion for Summary Judgment. Because of that state support, UVM is audited by the state Auditor of Accounts, 16 V.S.A. § 2281(a). From these facts we conclude that the University's finances are tied to the State, but that at the same time UVM is primarily financially independent.

In the decision-making arena we find that UVM is run by a Board of Trustees. The Board of Trustees consists of the governor ex officio, UVM's president ex officio, three members appointed by the governor, nine members elected by the legislature, nine self-perpetuating members, and two students. Disregarding the two ex officio members, twelve trustees are selected by the State, and eleven independently. Thus, the state-selected members outnumber the independent ones, but not by a

---

**4.** Chapter 31 outlines the duties of the Auditor of Accounts and procedures for State accounting. 1947 Vt.Laws 175. Chapter 188 describes the State Board of Education, superintendents, and school supervision. 1947 Vt.Laws 789.

Chapter 440 establishes and outlines the duties of the State Building Council. 1947 Vt.Laws 1975. Chapter 446 outlines the duties of and requisitioning of supplies by the state purchasing agent. 1947 Vt.Laws 2012.

significant margin. The Board of Trustees has "the entire management and control of its property and affairs," including "the right to use, control, sell or dispose of all real estate and personal property" belonging to the University. 1955 Vt.Laws 58. Further, the Board may receive rents due, may maintain suits in the name of the University, has control of all funds appropriated for UVM, and may establish a retirement fund. 1955 Vt.Laws 58; 16 V.S.A. § 2281(d); 16 V.S.A. § 2323. Other administrative agencies of the state have no governing body similar to the Board of Trustees, nor do they have these independent decision-making powers.

Several other factors serve to complicate this analysis. UVM's real and personal property acquired for educational purposes are exempt from taxation like that of state administrative agencies. 1955 Vt.Laws 59. The State Buildings Division does apparently contribute to the construction of buildings, although most construction plans do not require state approval. Affidavit of Ben R. Forsyth, *supra*. UVM employees are not defended by the Attorney General or indemnified by the state because UVM has its own counsel. UVM officials do have official state license plates. Affidavit of Thomas McCormick, attached to Plaintiff's Reply to Defendants' Motion for Partial Summary Judgment. Undeniably, UVM does have some state privileges, but it also operates more autonomously than the state administrative agencies and departments.

All of the above factors demonstrate that the University of Vermont is closely tied to the State of Vermont but that it is treated differently than the state administrative agencies for many purposes. We must therefore look to the interpretations of Vermont's courts and state officials to determine whether UVM must comply with the APA's procedures. Although the Vermont Supreme Court has not addressed the issue specifically, the Court's opinion in the recent case of *Molesworth v. University of Vt.*, 147 Vt. 4, 508 A.2d 722 (1986), intimates the Court's position. Molesworth was a UVM student seeking resident tuition status. The University denied her ap-

plication, so she filed a complaint in superior court seeking a declaratory judgment that she was entitled to in-state status. The Supreme Court refused to permit Molesworth to pursue her claim de novo. Because the legislature provided no specific review procedure, the Court ruled, any judicial review of internal University procedures had to occur by certiorari pursuant to V.R.C.P. 75. V.R.C.P. 75 is entitled "Review of Governmental Action." It applies to "[a]ny action or failure or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not appealable under Rule 74." V.R.C.P. 75(a). By concluding that V.R.C.P. 75 applies to UVM, the Vermont Supreme Court clearly identified internal action by UVM as governmental action.

However, the Court's opinion implicates more than just general governmental action. Rule 75 provides for review by certiorari where review is *not* available under Rule 74. Rule 74 provides for appeal "from the decision of any governmental agency in a contested case governed by the Administrative Procedure Act, 3 V.S.A. §§ 801–816." V.R.C.P. 74(a). The Court did not explain its choice of Rule 75 over Rule 74 as the proper vehicle for review, but a fair inference would be that the Court did not consider a determination of resident tuition status to be "the decision of any governmental agency in a contested case governed by the Administrative Procedure Act." Admittedly, the Court may have decided the case was not a "contested case" within the APA, see 3 V.S.A. § 801(b)(2), but, given the Court's lack of discussion of the issue, it is more likely that the Court just believed that UVM is not the type of governmental body that is governed by the APA. The Court may have assumed, as Judge Springer did in *Wolfgang v. University of Vt.*, No. S427–76CnC (Chittenden Sup.Ct. Aug. 25, 1977), that the subject of the application of the APA to UVM necessitated no discussion. We conclude that even though *Molesworth* does not explicitly determine the applicability of the APA to UVM, it implies a reluc-

tance to treat the University as an administrative agency.

Plaintiff urges us to consider the opinion of the Vermont Secretary of State. In Appendix I, Affidavit of Paul Gillies, attached to Plaintiff's Reply to Defendants' Motion for Partial Summary Judgment, the Deputy Secretary of State pronounces that "it is the administrative interpretation of the Secretary of State that the University is subject to the Administrative Procedures Act." While this opinion may be entitled to some weight as the opinion of a state enforcement agency (on this issue we express no opinion), the intention of the legislature and the interpretation of the courts have far greater weight.

■ Having examined legislative intent, agency characteristics, and judicial interpretation, we conclude that UVM is indeed an instrumentality and agent of the state. However, we do not believe that the legislature intended UVM to be subject to the types of procedures that govern state administrative agencies. Nor do we believe that the State courts would hold the University subject to the provisions of the Vermont APA. The APA speaks to purposes other than those of a University. The University does not cater to the public at large but to its students, faculty, and employees. It does not make rules of general applicability, and its policies are not reflective of an elected constituency. Therefore, we hold that the APA does not apply to the University of Vermont, and defendants' motion for summary judgment on Count III is granted.[5]

## II. The Open Meeting Law (Count IV)

■ The Vermont Open Meeting Law, 1 V.S.A. § 312 provides:

All meetings of any board or commission of any state agency or authority or of the state emergency board or of any agency or authority of any town, county, municipal corporation, including the legislative body of the municipality or board of selectmen, school district, or any other political subdivision, or of any committee of any of the foregoing boards or commissions, are declared to be public meetings open to the public at all times, except as provided in section 313 of this title [Executive sessions].

The first issue, therefore, is whether UVM is a "state agency" within the meaning of this statute. As we have outlined above, UVM has many characteristics of a state agency, yet it is clearly not the type of agency that is subject to the Administrative Procedures Act. The Open Meeting Law differs from the APA, however, because it does include legislative bodies, which the APA exempts, and school boards, which the Vermont Supreme Court has held exempt from the APA in *Burroughs v. West Windsor Board of School Directors*, 141 Vt. 234, 446 A.2d 377 (1982). Therefore, UVM may be subject to the Open Meeting Law even though the APA does not apply to it.

The legislature declared the policy behind the Open Meeting Law in 1 V.S.A. § 311(a):

In enacting this subchapter, the legislature finds and declares that public commissions, boards and councils and other public agencies in this state exist to aid in the conduct of the people's business and are accountable to them pursuant to Article VI of the Vermont constitution.

Article VI of the Vermont Constitution states, "That all power being originally inherent in and consequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them." Defendants argue that these policy provi-

5. Plaintiff refers us to an Iowa case, *Allegre v. Iowa State Board of Regents,* 349 N.W.2d 112 (Iowa 1984). In that case and its predecessor, *Allegre v. Iowa State Board of Regents,* 319 N.W.2d 206 (Iowa 1982), the Iowa Supreme Court found that the Iowa State Board of Regents, which oversees the University of Northern Iowa, took certain action in denying accu-mulated sick leave to retiring faculty that constituted agency action within the state APA. However, the Iowa Board by statute is defined as a state agency, Iowa Code chapter 262. Also, the Court never addressed the issue of *whether* the APA applied to the Board. The only question was whether the APA applied to *this type* of action by the Board.

sions suggest that the legislature intended the Open Meeting Law to apply to legislative and executive officers of government, not educators. We agree with defendants that UVM officials are not traditional officers of government. They are, however, state-connected officials, and their actions, as the Vermont Supreme Court has indicated in Molesworth, see discussion *supra*, do constitute governmental action. UVM utilizes public funds, and its Trustees are identified and empowered by statute. Therefore, we cannot conclude that the policies of the Open Meeting Law do not apply to UVM.

Plaintiff refers us to two opinions by the Vermont Attorney General. In 1974 the Vermont Attorney General issued an opinion stating that the University of Vermont Board of Trustees is a public body within the Open Meeting Law. Opinion No. 18–75, Appendix H to Plaintiff's Reply to Defendants' Motion for Partial Summary Judgment. In 1981 the Attorney General issued a further opinion outlining the extent to which the law applied to informal meetings of trustees. Appendix H, *supra.* Although the opinions of a state attorney general are not binding on a federal court, they are entitled to weight in determining the legislative intent behind a state statute. 19 C. Wright, A. Miller, and E. Cooper, Federal Practice and Procedure § 4507, at 98. The Attorney General reasoned that the Open Meeting Law applies to the Board of Trustees because of the broad public policy (quoted above) of the law. The opinion also relied on a Washington case, *Cathcart v. Andersen*, 10 Wash.App. 429, 517 P.2d 980 (1974), in which the Washington Court of Appeals held that the meetings of the dean and faculty of the University of Washington Law School must be conducted in accordance with the state open public meetings act. That decision was later affirmed by the Washington Supreme Court. *Cathcart v. Andersen*, 85 Wash.2d 102, 503 P.2d 313 (1975). Neither decision explained why the law applied to the University and its Board of Regents. Their analyses focused instead on whether the law school, as part of the University, was covered, and each analysis began with the

assumption that the University was a "public agency" within the law. In the case of UVM we must determine in the first instance whether UVM is a "state agency" within the law.

In several other states the governing board of the state university has been held subject to the state open meetings requirements. In *Board of Trustees of State Institutions of Higher Learning v. Mississippi Publishers Corp.*, 478 So.2d 269 (Miss.1985), the Supreme Court of Mississippi required the Board of Trustees of the state universities to comply with Mississippi's open meeting law. The Court found that because the Board are trustees they have a duty to disclose and report all actions to their beneficiaries. Statutes require the Board to submit to state audit, to report expenditures to the legislature, and to keep minutes and records open to the public; therefore, the Court concluded, the legislature intended the Board to be publicly accountable and the open meeting law to apply to the Board.

In *Holden v. Board of Trustees of Cornell University*, 80 A.D.2d 378, 440 N.Y. S.2d 58 (1981), the Third Department held the Cornell University Board of Trustees subject to the state open meeting law whenever its deliberations concern the statutory colleges. The statutory colleges are the four colleges that operate both as part of Cornell and as part of the State University of New York system. Thus, even though the Board of Trustees performs many private functions, the Court concluded, "Management of public moneys is public business," and therefore the Cornell trustees are subject to the open meetings law.

In *Wood v. Marston*, 442 So.2d 934 (Fla. 1983), the Florida Supreme Court construed the Florida Sunshine Law to apply to Florida's institutions of higher education, analogizing the Sunshine Law to the state Public Record Law and APA, both of which include specific references to state universities. Because the Public Record Law and APA contain outright reference to universities, the Court concluded that if the legislature had intended to exclude the universi-

ties from the Sunshine Law, it would have explicitly done so. Earlier, the Florida Supreme Court had explained the purpose of the Sunshine Law: to maintain the public's faith in government by limiting secrecy and closed records. *Board of Pub. Instruction v. Doran,* 224 So.2d 693 (Fla.1969).

The University of Vermont presents a slightly different situation than any of these state universities. Although partially publicly supported, UVM is primarily privately financed and has many powers independent of the state. It does, however, receive a significant amount of state funds, its accounts are audited by the state auditor, and half of its trustees are chosen by government officials. The Vermont legislature has identified the purpose of the Vermont Open Meeting Law as similar to that expressed by the Florida Supreme Court in *Doran*—to maintain public accountability in public officials and to ensure public access to decisionmakers. As the University of Vermont has control over a significant amount of public funds, it would be in the public interest for citizens to be able to attend meetings that utilize those funds. Additionally, as the Mississippi Supreme Court pointed out, the Board of Trustees are *trustees;* therefore, they are accountable to their beneficiaries, and their meetings should be open. Finally, requiring the University to comply with the Open Meeting Law will not wreak havoc with its ability to perform its educational function. The law provides for executive sessions when nondisclosure is necessary. *See* 1 V.S.A. § 313. The Vermont Supreme Court has not spoken authoritatively on the issue. Given the legislative policy behind the law, the Attorney General's longstanding opinion, and UVM's institutional character, we conclude that UVM is a "state agency" within the intent of 1 V.S.A. § 312.

We must, however, determine whether this hearing body is a "board or commission" whose meetings must be open to the public. This committee was convened for a specific purpose: to recommend to the President of the University whether to terminate plaintiff for cause. It is not a standing committee of the University with regular meetings. It does not report to the Board of Trustees or any other public entity; it merely recommends action to the University President. Therefore, defendants argue, there is no public interest nor any accountability of public officials involved, and no purpose of the Open Meeting Law would be met by requiring this committee's meetings to be public.

The Court disagrees. To permit this committee to operate outside the Open Meeting Law would be to enable the University to take round-about steps to avoid its public duty. The Board of Trustees has final control over all internal operations of the University, and that control derives from their statutory authority. Therefore, all activities by UVM officials implicate the Board and its governmental authority. Finally, although this action does not specifically involve public funds or the governing Board of Trustees, it resembles the type of secret activities the Open Meeting Law seeks to prevent. Certainly if the committee considered this inquiry particularly sensitive, it could vote to go into executive session, see 1 V.S.A. § 313(a)(4), subject of course to any right of plaintiff to a public hearing on any formal charges, *id.*

In sum, we conclude that the Vermont Open Meeting Law, 1 V.S.A. § 312, does apply to this committee of the University of Vermont, and, therefore, we deny defendants' motion for summary judgment on Count IV.

### III. The Public Records Law (Count V)

██ The Vermont Public Records Law permits "[a]ny person [to] inspect or copy any public record or document of a public agency." V.S.A. § 316(a). The policy behind this statute is "to provide for free and open examination of records consistent with Chapter I, Article 6 of the Vermont Constitution. Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." 1 V.S.A. § 315. This policy is similar in tone to the policy behind the Open Meeting Law;

however, unlike the Open Meeting Law, the Public Records Law does define "public agency."

"As used in this subchapter, 'public agency' or 'agency' means any agency, board, department, commission, committee, branch or authority of the state or any agency, board committee, department, branch, commission or authority of any political subdivision of the state." 1 V.S.A. § 317(a). This definition is more inclusive than the definition of "agency" under the APA, see *supra*, suggesting that the legislature intended it to sweep more broadly. Further, in the definition of "public record" the law specifically exempts from disclosure "student records at educational institutions funded wholly or in part by state revenue." 1 V.S.A. § 317(b)(11). This exemption indicates that the legislature intended the law to include educational institutions, and UVM undeniably comes within the rubric of institutions funded "in part by state revenue." Therefore, for the policy reasons outlined in our discussion of the Open Meeting Law above and because the legislature intended to include educational institutions such as UVM within the statute, we find that the Public Records Law does apply to UVM.

■ We must determine, however, whether the documents plaintiff seeks are "public records" not subject to exemption within 1 V.S.A. § 317(b). Defendants argue that student evaluations are not "papers, staff reports, individual salaries, salary schedules or any other written or recorded matters produced or acquired in the course of agency business." The Court disagrees. Student evaluations of faculty and courses are written documents that are acquired by the University in the course of its business, providing educational services. Defendants also argue that student evaluations are not the type of document the legislature intended the public to have access to. We agree that student evaluations are somewhat hybrid documents. They are not strictly personal and confidential like student or personnel records, yet they relate specifically to an individual teacher's performance. These documents should

perhaps not be disclosed to the public-at-large because they involve the evaluation of an employee, see 1 V.S.A. § 317(b)(7); however, Dr. Sprague is not a member of the public-at-large but the employee whose performance is being evaluated. She should therefore receive access to these documents under Section 317(b)(7). In conclusion, based on legislative intent and policy, the Court finds that UVM must comply with the Public Records Law, that these student evaluations are within the Public Records Law, and that as a result defendants' motion for summary judgment on Count V is denied.

## IV. The Vermont Fair Employment Practices Act (Count VI)

■ The Vermont Fair Employment Practices Act provides that "[i]t shall be unlawful employment practice ... (5) For any employer, employment agency, or labor organization to discharge or in any other manner discriminate against any employee because such employee has lodged a complaint of discriminatory acts or practices." 21 V.S.A. § 495(a). Defendants claim that they are entitled to judgment as a matter of law under this count because they allege there is no material factual dispute. Plaintiff, however, points out a number of material factual disputes.

The Vermont Fair Employment Practices Act (FEP) is patterned after title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the standards and burdens of proof to be applied to an FEP case are identical to those for a title VII case. *Cobb v. Dufresne-King, Inc.*, 603 F.Supp. 1048, 1053 (D.Vt.1985). Under title VII, to prove retaliatory discrimination the plaintiff must initially prove a prima facie case of discrimination; then the burden shifts to the defendant to articulate some legitimate non-discriminatory reason for the conduct; and finally, if defendant so articulates, the plaintiff must prove that those reasons are a mere pretext. *See Cobb*, 603 F.Supp. at 1052; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Plaintiff alleges that since her filing of a complaint with the attorney general in 1979, she and her department chair, Dr. Parsons, have had repeated unpleasant encounters. Plaintiff alleges that Dr. Parsons treats her with disrespect and harasses her. She has submitted several letters as well as an affidavit in support. See Affidavit of Ruth Sprague. Defendants do not deny that Dr. Parsons has played an instrumental role in bringing the current charges against plaintiff. They do deny, however, that these charges are anything but legitimate on their face.

In addition, plaintiff has submitted affidavits to show that other faculty members charged with similar misconduct have been treated differently. See Affidavit of Michael Gordon; Affidavit of Malcolm Severance; Affidavit of Kay Frances Schepp. These allegations, if proved at trial, would be sufficient to establish plaintiff's prima facie case. The burden would then shift to defendants to demonstrate a legitimate reason for the actions taken against plaintiff. Defendants are therefore not entitled to judgment as a matter of law; there are disputed material facts which, if found in favor of plaintiff, could establish a prima facie case of retaliatory discrimination. Plaintiff has stated a cause of action under the Vermont FEP, and defendants' moion for summary judgment on Count VI is denied.

### ORDER

For the foregoing reasons, defendants' motion for partial summary judgment is GRANTED as to Count III of plaintiff's amended complaint and DENIED as to Counts IV, V, and VI.

IT IS FURTHER ORDERED that defendants' motion to strike certain appendices from plaintiff's Reply Memorandum to Defendants' Motion for Partial Summary Judgment is DENIED.

SO ORDERED.