2006 VT 95

# State of Vermont v. James Curley-Egan

[910 A.2d 200]

No. 05-492

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed September 1, 2006

*Robert Simpson*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellant.

*Bradley S. Stetler* of *Stetler, Allen & Kampmann*, Burlington, for Defendant-Appellee.

*Jeffrey J. Nolan* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Amicus Curiae The University of Vermont and State Agricultural College.

¶ 1. **Skoglund, J.** This case requires us to determine whether 16 V.S.A. § 2283, the statute empowering the trustees of the University of Vermont and State Agricultural College (UVM) to create a police force, is a valid, constitutional delegation of police power. The district court concluded that it was not and granted defendant's motion to suppress evidence of a roadside stop made by a UVM police officer as well as defendant's motions to dismiss the Driving Under the Influence charge and civil suspension proceeding that resulted from the stop. We hold that § 2283 is a proper delegation of police power and reverse the decision of the district court.

¶ 2. The statute empowers the UVM Board of Trustees to "establish a department of police services and authorize the appointment thereto of police officers and a director of the department who shall be a police officer." 16 V.S.A. § 2283(a). UVM police officers "shall have all law enforcement powers provided by section 1935 of Title 24." *Id.* That statute empowers municipal police officers. 24 V.S.A. § 1935. All police officers must swear an oath, *id.*, complete law enforcement officer training in conformity with chapter 151 of Title 20, *id.* § 2283(b), and UVM officers must be employed in good standing by the university. *Id.* § 2283(c). Finally, the statute establishes a complaint procedure:

> Upon written complaint of misconduct by one or more persons concerning any police officer appointed under this section, the director of the department shall cause an investigation to be conducted in a manner consistent with the policies and procedures established by the board of trustees or its duly authorized representative for such purposes. The complainant may appeal the final action of the department to the president of the University of Vermont, who shall convene an advisory commission consisting of three persons, no more than one of whom has a direct or indirect university affiliation. The advisory commission shall provide advice and counsel to the president in assuring appropriate final disposition of the complaint.

*Id.* § 2283(d).

¶ 3. The facts underlying the charges are not in dispute. At approximately 1:15 a.m. on May 7, 2005, a UVM police officer was driving north on South Prospect Street in Burlington and saw a vehicle driving in the southbound lane with only one headlight. The officer turned around and followed the vehicle onto Cliff Street and stopped the vehicle after it turned left onto Summit Street. All of these streets lie outside UVM's property boundaries.

¶ 4. The officer found defendant behind the wheel. The officer noticed that defendant's eyes were watery and bloodshot and that his speech was slurred. The officer also observed an alcohol container behind the passenger seat. Defendant had difficulty exiting the vehicle and stood with a slight sway. He also showed signs of intoxication while performing field sobriety tests. After refusing a preliminary breath test, defendant was arrested. Defendant identified himself with a Massachusetts driver's license and gave a current address of "410 Wilkes Hall, UVM."

¶ 5. Defendant was charged with a DUI violation under 23 V.S.A. § 1201(a)(2), and the Commissioner of Motor Vehicles suspended his license under 23 V.S.A. § 1205. Defendant moved to dismiss the case or, in the alternative, to suppress all evidence stemming from the stop, arguing that the operation of the UVM police department is unconstitutional. He reasoned that the department is a private entity not exclusively governed by the people or their legal representatives as required for valid police authority under Chapter I, Article 5 of the Vermont Constitution.

¶ 6. The district court agreed and granted defendant's motion. The court began its legal analysis by observing that "[t]he only state supervision [of UVM police officers] arises from the initial training and certification." The court focused on "the private status of the supervisors" of the UVM police department, namely, the UVM Board of Trustees, stressing that "[n]one of the Board of Trustees ... must answer to an electorate made up of all those subject to the police jurisdiction." It then reasoned that although the Legislature could properly delegate to UVM the authority to create a police force to serve the campus community, it is a "much different situation" when UVM police jurisdiction extends "beyond the real property boundaries of the University to encompass private citizens not otherwise connected to the University or to its educational functions." The court also was concerned that a citizen would have no remedy for UVM police misconduct other than under 16 V.S.A. § 2283(d), which establishes only internal complaint and appeal procedures.

¶ 7. As a result of the above analysis, the district court interpreted Article 5's requirement that the people, "by their legal representatives, have the sole, inherent, and exclusive right of governing and regulating the internal police," as requiring direct oversight of the UVM police force by elected officials. Vt. Const. ch. I, art. 5. Thus, the court concluded, by giving the UVM police jurisdiction to arrest a person unaffiliated with UVM on a city street outside UVM's property, § 2283 creates a police force lacking "accountability to the legal representatives of this state" in violation of Chapter 1, Article 5 of the Vermont Constitution.

¶ 8. The State appealed, and UVM was permitted to appear as amicus curiae. The State and UVM argue that the court erred by characterizing UVM as a private entity and by interpreting Chapter I, Article 5 as requiring control by elected officials. In their view, UVM is a sufficiently public institution, and the UVM charter vests the Legislature with sufficient authority over UVM to satisfy Chapter I, Article 5. In response, defendant reiterates the core argument he made before the district court, which also formed the heart of the court's reasoning: because UVM is not a sovereign entity it is not a proper delegee of police power, and, therefore, § 2283 delegates police power beyond the control of the people and their legal representatives, in violation of Chapter I, Article 5. Defendant also posits that if UVM functions as a public entity, it does so only when pursuing its core educational purpose, which does not include operating a police force. Finally, defendant asserts that § 2283 is invalid because it allocates statewide jurisdiction to the UVM police department. We reject defendant's arguments and agree with the State and UVM that the Legislature properly delegated to UVM the authority to create and operate its police department. Accordingly, we reverse.

I.

¶ 9. Before assessing the propriety of § 2283, we review the contours of the police power as articulated in our past decisions. The police power has long been understood to encompass "the general power of the legislative branch to enact laws for the common good of all the people." *State v. Theriault*, 70 Vt. 617, 625, 41 A. 1030, 1033 (1898). The "proper function" of the police power is to balance "the possession and enjoyment by the individual of all his rights" with "such reasonable regulations and restraints as are essential to the preservation of the health, safety and welfare of the community." *State v. Morse*, 84 Vt.

387, 393, 80 A. 189, 191 (1911). Thus, the police power is the practical manifestation of each individual's agreement, as part of the social compact, to subject his rights to the common good when a conflict arises.

¶ 10. It follows that the police power "is not a grant derived from or under a written constitution"; rather, it is "inherent" in state government. *In re Guerra*, 94 Vt. 1, 8, 110 A. 224, 227 (1920) ("It is an attribute of sovereignty, or rather it is sovereignty itself."); see also *Mut. Loan Co. v. Martell*, 222 U.S. 225, 233 (1911) ("In a sense, the police power is but another name for the power of government . . . ."). The police power is so inextricably bound to state sovereignty that it is "beyond the power of a state to divest itself of its right and duty in respect of the full exercise of this power," including by delegating police power to a nonsovereign entity. *Sabre v. Rutland R.R.*, 86 Vt. 347, 364, 85 A. 693, 700 (1913).

¶ 11. Our Constitution recognizes that "the people of this state by their legal representatives, have the sole, inherent, and exclusive right of governing and regulating the internal police of the same." Vt. Const., ch. I, art. 5. Article 5 thus expresses a "general distribution of powers" to the Legislature, *Sabre*, 86 Vt. at 365, 85 A. at 700, authorizing the Legislature "to pass measures for the general welfare of the people" and making the Legislature "itself the judge of the necessity or expediency of the means adopted," *Guerra*, 94 Vt. at 8, 110 A. at 227. The Legislature also possesses the authority to delegate the police power to other state or municipal instrumentalities. See, e.g., *Elliott v. Vt. State Fish & Game Comm'n*, 117 Vt. 61, 68, 84 A.2d 588, 592-93 (1951) (recognizing that Legislature can validly delegate police power to state fish and game commission); *Carty's Adm'r v. Vill. of Winooski*, 78 Vt. 104, 108, 62 A. 45, 46 (1905) (upholding delegation to towns and incorporated villages of authority to construct and maintain jails).

¶ 12. The police power is not, however, "unlimited, and the validity of any mandate promulgated under it is for judicial determination." *State v. Quattropani*, 99 Vt. 360, 363, 133 A. 352, 353 (1926). In reviewing the Legislature's exercise of the police power, we presume that the legislative act in question is valid unless it bears no "just relation" to the purposes underlying the police power[1] or amounts to a "plain and palpable invasion of constitutional rights." *Beecham v. Leahy*, 130 Vt.

---

[1] Defendant does not argue that § 2283 bears no just relation to the purposes of the police power.

164, 172, 287 A.2d 836, 841 (1972). If we conclude that the act suffers from either infirmity then we must invalidate the act. *Id.* Further, we assume the act was within the Legislature's power absent "clear and irrefragable evidence" to the contrary. *Glidden v. Conley,* 2003 VT 12, ¶ 11, 175 Vt. 111, 820 A.2d 197.

## II.

■ ¶ 13. With these principles in mind, we turn to the key question in this case: Is UVM a sufficiently public entity such that § 2283 was a constitutional delegation of police power by the Legislature? As defendant argues, the Legislature cannot delegate police power to a private entity; allowing it to do so would run afoul of this Court's longtime recognition that it is "beyond the power of the state to divest itself" of its right and duty to exercise the police power. *Sabre,* 86 Vt. at 364, 85 A. at 700. In light of UVM's charter and prior decisions addressing UVM's public-private status, however, we conclude that UVM is a sufficiently public institution to properly receive the delegation of police power via § 2283.

¶ 14. We begin with UVM's charter, which was initially granted by the Legislature in 1791 and has been amended several times, most recently in 1977. 16 V.S.A. App. pt. I ch. 1, at 2-3. In the current version, the Legislature made explicit that UVM "shall be recognized and utilized as an instrumentality of the state for providing public higher education." *Id.* § 1. The charter entrusts the Board of Trustees with "the entire management and control" of UVM and requires that a majority of the twenty-five-member Board be at least indirectly accountable to the electorate: three members are appointed by the Governor with the consent of the senate, nine members are elected by the Legislature, and one slot is filled by the Governor, ex officio. *Id.* § 2. It also provides for legislative oversight, requiring UVM to make annual reports to the Legislature and authorizing the Legislature to "annually appoint a board of visitors, who may annually examine the affairs of" UVM. *Id.* § 8. Finally, the charter may be amended by the Legislature "from time to time . . . to provide for the more perfect and effective accomplishment of its objects." *Id.* § 16. Thus, the Legislature, via the UVM charter, has made clear in a number of ways the close connection between UVM and the State.

¶ 15. Recognizing that connection, we have observed that "[t]he University is a creation of the Legislature" and that "the officials of the University are 'state-connected officials' . . . [whose] actions constitute

'governmental actions.'" *Animal Legal Def. Fund, Inc. v. Institutional Animal Care & Use Comm. of Univ. of Vt.*, 159 Vt. 133, 137-38, 616 A.2d 224, 226 (1992) (quoting *Sprague v. Univ. of Vt.*, 661 F. Supp. 1132, 1138 (D. Vt. 1987)). As a result, we held in *Animal Legal Defense Fund* that the Legislature, by virtue of the above-described charter provisions, had sufficient authority over UVM and its Institutional Animal Care and Use Committee (IACUC) to render both entities public bodies subject to Vermont's Open Meeting Law, 1 V.S.A. §§ 310-314, and Public Records Act, 1 V.S.A. §§ 315-320. *Animal Legal Def. Fund, Inc.*, 159 Vt. at 138-40, 616 A.2d at 226-27. As to the IACUC,[2] we noted that its authority flows "in significant part" from the Board of Trustees because the committee's members are appointed by the university's chief executive officer, who in turn answers to the Board of Trustees. *Id.* at 138, 616 A.2d at 227. Because its reports on UVM's animal research practices could affect the school's animal research policies and continued receipt of federal funds, we concluded that the IACUC is "a committee of the University of Vermont that aids in the conduct of the people's business" subject to the Open Meeting Law and Public Records Act. *Id.* at 139-40, 616 A.2d at 227.

¶ 16. We have also previously characterized the conduct of UVM officials as governmental action. *Molesworth v. Univ. of Vt.*, 147 Vt. 4, 6, 508 A.2d 722, 723 (1986). In *Molesworth*, we observed that UVM's residency determinations are reviewable under the Vermont Rules of Civil Procedure which provide for judicial review of governmental actions. V.R.C.P. 75; see *Sprague v. Univ. of Vt.*, 661 F. Supp. at 1136 (noting that *Molesworth* "clearly identified internal action by UVM as governmental action").

¶ 17. Additionally, Vermont's federal district court analyzed the public status of UVM in *Sprague*, holding that UVM was not a state agency within the meaning of the Vermont Administrative Procedure Act but was subject to Vermont's Open Meeting Law. 661 F. Supp. at 1137-38. In determining that UVM was not subject to the VAPA, the court relied upon the fact that UVM, while holding "some state privileges, . . . also operates more autonomously than the state administrative agencies and departments." *Id.* at 1136. Observing that UVM "does not cater to the public at large" or "make rules of general

---

[2] The IACUC was created to oversee the university's research practices involving animals and the conditions of animals within the institution. 7 U.S.C. § 2143(b)(1). In order to receive federal funding, the chief executive of any research institution that uses animals for research must appoint such a committee. 42 U.S.C. § 289d(b)(1).

applicability," the court held that the Legislature did not intend UVM "to be subject to the types of procedures that govern state administrative agencies." *Id.* at 1137.[3]

¶ 18. En route to that conclusion, however, the court emphasized the governmental character of UVM. With respect to the charter, the court noted that "[t]he use of the word 'instrumentality' demonstrates that the legislature intended UVM to be closely connected to the state." *Id.* at 1134-35. After examining UVM's financial structure, the composition of its Board of Trustees, and other characteristics, the court concluded that UVM, while not an agency for VAPA purposes, "is indeed an instrumentality and agent of the state." *Id.* at 1137. The court also observed that the Trustees' "final control over all internal operations of the University ... derives from their statutory authority" so that the actions of UVM officials "implicate the Board and its governmental authority." *Id.* at 1139.

¶ 19. Collectively, these judicial assessments of UVM's position on the public-private spectrum demonstrate that it is an instrumentality of the state whose officials wield governmental authority. In enacting 16 V.S.A. § 2283, the Legislature properly delegated its police power to a state instrumentality. Thus, we perceive no "plain and palpable invasion of constitutional rights," resulting from the passage of § 2283 or the existence and operation of UVM's police department. *Beecham*, 130 Vt. at 172, 287 A.2d at 841.

¶ 20. Based on the foregoing, we reject the cornerstone of the reasoning employed by the district court and defendant: the claim that the UVM police department is not controlled solely and exclusively by the people through their legal representatives as required by our Constitution because the UVM Board of Trustees, which, under § 2283, controls the police force, contains public and private appointees. To emphasize this point, defendant analogizes § 2283 to a delegation of similar authority to a hypothetical board consisting of the IBM board of directors and the Town of Essex's selectboard.

---

[3] This Court has not decided whether UVM is a state agency under the VAPA. See *Huddleston v. Univ. of Vt.*, 168 Vt. 249, 252 n.1, 719 A.2d 415, 418 n.1 (1998) (noting that the court in *Sprague* "thoroughly examined" whether UVM is a state agency under VAPA and stating that "our holding here makes it unnecessary to reach those broader questions").

¶ 21. This reasoning fails, however, by focusing too narrowly on the relationship between UVM's police officers and the Board of Trustees as their supervisor. The proper relationship to consider for constitutional purposes is that between the people and their representatives in the Legislature on one hand and UVM, including its police force, on the other. As discussed above, UVM is a creation of the Legislature and remains subject to the Legislature's control. The UVM charter explicitly recognizes the Legislature's broad power to amend it. 16 V.S.A. App. pt. I. ch. 1 § 16. Thus, the Legislature — the representatives of the people — possesses the power to alter UVM and its subdivisions, including its police department, by virtue of its express authority to amend the document that created and defines the institution. In this way, UVM stands in stark contrast to a private entity, like IBM in defendant's hypothetical, to which the Legislature could not properly allocate general police power. Therefore, we reject the reasoning of defendant and the trial court and hold that § 2283 did not delegate police power to a private entity beyond the control of the people and their legal representatives.

¶ 22. Nor are we persuaded that § 2283 places police power beyond the control of the people because, as defendant argues, the statute's complaint procedure lacks sufficient oversight by elected officials. Under the statute, when faced with a written misconduct complaint, the director of the UVM police department must conduct an investigation consistent with policies and procedures established by the UVM Board of Trustees. § 2283(d). The complainant may appeal to UVM's president, who must convene an advisory committee consisting of three people, "no more than one of whom has a direct or indirect university affiliation." *Id.* Defendant and the district court relied on the fact that this process involves little oversight by elected officials as further evidence that § 2283 is unconstitutional.

¶ 23. This argument also suffers from an overly narrow focus. Stepping back and widening the view, it is clear that when UVM acts pursuant to statutory authority, its conduct is governmental action reviewable under Rule 75 of the Vermont Rules of Civil Procedure. See *Molesworth*, 147 Vt. at 6, 508 A.2d at 723 (recognizing that UVM's residency determinations under 16 V.S.A. § 2282 are subject to Rule 75 review); see also *Sprague*, 661 F. Supp. at 1136 (noting that *Molesworth* "clearly identified internal action by UVM as governmental action"). Thus, the complaint procedure remains transparent and subject to oversight by the judiciary, a public governmental institution. In addition, § 2283 does not alter UVM's exposure under 42 U.S.C.

§ 1983 for misconduct by its police officers. Thus, the view espoused by the district court and defendant — that the complaint mechanism renders the UVM police department unanswerable to the people — is unfounded.

¶ 24. Defendant also argues that § 2283 is invalid because UVM is a state instrumentality only to the extent its activities implicate "public education issues." In support of this claim, defendant points to the fact that in *Animal Legal Defense Fund* we declined to hold that the Open Meeting Law covers all UVM committees. First, this limitation does not help defendant's argument because it simply recognizes the uncontroversial principle that we do not adjudicate the status of parties not involved in the case before us. Further, contrary to defendant's claim, that limitation of our holding did not signal an intent to narrowly circumscribe the kinds of UVM entities that might qualify as state instrumentalities. Rather, we suggested that any UVM body that "aids in the conduct of the people's business" would so qualify. 159 Vt. at 139, 616 A.2d at 227.

¶ 25. By ensuring a safe learning environment, a basic precondition of a successful educational institution, the UVM police department fulfills a role at least as closely related to the educational mission as the role of the IACUC in *Animal Legal Defense Fund.* See *id.* (discussing IACUC's authority to make reports and influence university policy regarding animal research). Therefore, the creation and operation of its police force implicate and promote UVM's educational mission such that UVM is properly viewed as a state instrumentality in this context.

¶ 26. Finally, defendant and the trial court question the legitimacy of the Legislature's delegation of statewide, as opposed to geographically limited, jurisdiction to UVM's police force. Officers appointed by the Board of Trustees "shall have all law enforcement powers provided by section 1935 of Title 24." 16 V.S.A. § 2283(a). Section 1935 of Title 24 provides that "[t]he powers granted to police officers under this section may be exercised statewide." Thus, 16 V.S.A. § 2283(a) confers statewide authority on UVM's police officers.

¶ 27. The Legislature did not exceed its constitutional authority in so doing. As noted above, we presume a statute is constitutional absent "clear and irrefragable evidence" to the contrary. *Glidden*, 2003 VT 12, ¶ 11. Here, UVM's status as a state instrumentality enabled the Legislature to delegate police power to UVM validly under Article 5. Because UVM's public status made it a proper recipient of the Legisla-

ture's delegation of police power, the Legislature was free to allocate statewide jurisdiction to UVM's police force.[4]

■ ¶ 28. In conclusion, we hold that the Legislature properly delegated its police power to UVM when it passed 16 V.S.A. § 2283 and thereby authorized UVM to create a university police department. UVM is a sufficiently public and state-connected entity to be viewed as a state instrumentality for purposes of receiving this delegation of the Legislature's police power. Further, despite UVM's considerable autonomy in fulfilling its mission as an educational institution, the Legislature retains sufficient authority, as recognized in UVM's charter, over the institution, and, in turn, the police department, so that the police power delegated by § 2283 is not beyond the control of the people and their legal representatives. Thus, § 2283 comports with Chapter I, Article 5 of the Vermont Constitution, and the trial court erred in concluding otherwise.

*Reversed and remanded.*

---

[4] We note that several states have chosen to confer broad territorial jurisdiction on university police. See, e.g., 110 Ill. Comp. Stat. Ann. 305/7(a) (West 2006) (conferring jurisdiction on University of Illinois police in counties containing university or any of its branches or property); Minn. Stat. Ann. § 137.12 (West 2006) (conferring jurisdiction "throughout the state of Minnesota"); N.J. Stat. Ann. § 18A:6-4.5 (West 2006) (conferring jurisdiction "anywhere in the State of New Jersey"); Tex. Educ. Code Ann. § 51.203 (Vernon 2006) (conferring jurisdiction in "all counties" in which university property is located). The fact that other states have chosen to more closely limit the territorial authority of their university police forces in no way alters our conclusions or analysis in this case. See, e.g., Fla. Stat. Ann. § 1012.97(2) (West 2006) (limiting jurisdiction to "property or facilities ... under the guidance, supervision, regulation, or control of the state university" and "off campus when hot pursuit originates on any such property or facilities"); Ind. Code Ann. § 20-12-3.5-2(b) (West 2006) (limiting jurisdiction to "real property owned or occupied by their institutions, including the streets passing through and adjacent thereto").